**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

KEVIN MACK,                          :
                                     :      Civil Action No. 10-2204 (FLW)
                    Plaintiff,       :
                                     :
          v.                         :      **OPINION**
                                     :
ASBURY PARK POLICE, et al.,          :
                                     :
                    Defendants.      :

**APPEARANCES:**

Plaintiff pro se
Kevin Mack
Garden State Youth Correctional Center
P.O. Box 11410
Yardville, NJ 08620

**WOLFSON**, District Judge

     Plaintiff Kevin Mack, a prisoner confined at Garden State
Youth Correctional Center in Yardville, New Jersey, seeks to
bring this action in forma pauperis pursuant to 42 U.S.C. § 1983,
alleging violations of his constitutional rights.  Based on his
affidavit of indigence and the absence of three qualifying
dismissals within 28 U.S.C. §1915(g), the Court will grant
Plaintiff's application to proceed in forma pauperis pursuant to
28 U.S.C. § 1915(a) and order the Clerk of the Court to file the
Complaint.

     At this time, the Court must review the Complaint to
determine whether it should be dismissed as frivolous or

malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

I.   BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that on July 16, 2008, certain unidentified Asbury Park Police officers entered his home while in pursuit of an unidentified male for an alleged drug transaction.  Plaintiff alleges that the police officers ran through his home with their guns drawn, frightening Plaintiff, his wife, and his children.  Plaintiff alleges that he took the officers to a gun that his children had found and that the officers asserted that they had found the bag that the unidentified male was carrying.  Plaintiff alleges that his girlfriend corroborated his statement that he had been in the house all day.  Nevertheless, according to the Plaintiff, the officers told Plaintiff and his girlfriend that if Plaintiff "didn't own up to the guns hat they would be calling the Division of youth and family services to come get my children and that me and my girlfriend would be locked up for child endangerment."  Plaintiff alleges that the police then forced his girlfriend to sign a statement saying she gave them permission to search the house.  Plaintiff alleges that the police then arrested him.  The

Court construes this as an allegation that the Asbury Park Police conducted an unlawful search and arrested him without probable cause.

Plaintiff also alleges that his defense attorney, Thomas Martin, failed to provide effective assistance in connection with his plea negotiations, resulting in Plaintiff entering a guilty plea.

## II.  STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint must plead facts sufficient at least to "suggest" a basis for liability. Spruill v. Gillis, 372 F.3d 218, 236 n.12 (3d Cir. 2004). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level ... .

Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (citations omitted).

The Supreme Court has demonstrated the application of these general standards to a Sherman Act conspiracy claim.

> In applying these general standards to a § 1 [conspiracy] claim, we hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made. Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely." ... It makes sense to say, therefore, that an allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality. Hence, when allegations of parallel conduct are set out in order to make a § 1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.
>
> The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the "plain statement" possess enough heft to "sho[w]" that the pleader is entitled to relief." A statement of parallel conduct, even conduct consciously undertaken, needs some setting suggesting the agreement necessary to make out a § 1 claim; without that further circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory. ...

Twombly, 127 S.Ct. at 1965-66 (citations and footnotes omitted).

The Court of Appeals for the Third Circuit has held, in the context of a § 1983 civil rights action, that the Twombly pleading standard applies outside the § 1 antitrust context in

which it was decided.  See Phillips v. County of Allegheny, 515
F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read
Twombly so narrowly as to limit its holding on plausibility to
the antitrust context").

> Context matters in notice pleading.  Fair notice under
> Rule 8(a)(2) depends on the type of case -- some
> complaints will require at least some factual
> allegations to make out a "showing that the pleader is
> entitled to relief, in order to give the defendant fair
> notice of what the ... claim is and the grounds upon
> which it rests."  Indeed, taking Twombly and the
> Court's contemporaneous opinion in Erickson v. Pardus,
> 127 S.Ct. 2197 (2007), together, we understand the
> Court to instruct that a situation may arise where, at
> some point, the factual detail in a complaint is so
> undeveloped that it does not provide a defendant the
> type of notice of claim which is contemplated by
> Rule 8.  Put another way, in light of Twombly, Rule
> 8(a)(2) requires a "showing" rather than a blanket
> assertion of an entitlement to relief.  We caution that
> without some factual allegation in the complaint, a
> claimant cannot satisfy the requirement that he or she
> provide not only "fair notice," but also the "grounds"
> on which the claim rests.

Phillips, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when
assessing the sufficiency of any civil complaint, a court must
distinguish factual contentions -- which allege behavior on the
part of the defendant that, if true, would satisfy one or more
elements of the claim asserted -- and "[t]hreadbare recitals of
the elements of a cause of action, supported by mere conclusory
statements."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).
Although the Court must assume the veracity of the facts asserted
in the complaint, it is "not bound to accept as true a legal

conclusion couched as a factual allegation." <u>Id.</u> at 1950.  Thus,

"a court considering a motion to dismiss can choose to begin by

identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth." <u>Id.</u>

> Therefore, after <u>Iqbal</u>, when presented with a
> motion to dismiss for failure to state a claim,
> district courts should conduct a two-part analysis.
> First, the factual and legal elements of a claim should
> be separated.  The District Court must accept all of
> the complaint's well-pleaded facts as true, but may
> disregard any legal conclusions.  Second, a District
> Court must then determine whether the facts alleged in
> the complaint are sufficient to show that the plaintiff
> has a "plausible claim for relief."  In other words, a
> complaint must do more than allege the plaintiff's
> entitlement to relief.  A complaint has to "show" such
> an entitlement with its facts. <u>See Phillips</u>, 515 F.3d
> at 234-35.  As the Supreme Court instructed in <u>Iqbal</u>,
> "[w]here the well-pleaded facts do not permit the court
> to infer more than the mere possibility of misconduct,
> the complaint has alleged-but it has not
> 'show[n]'-'that the pleader is entitled to relief.'"
> This "plausibility" determination will be "a
> context-specific task that requires the reviewing court
> to draw on its judicial experience and common sense."

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009)

(citations omitted).

> Rule 10(b) of the Federal Rules of Civil Procedure provides:

> A party must state its claims ... in numbered
> paragraphs, each limited as far as practicable to a
> single set of circumstances.  ...  If doing so would
> promote clarity, each claim founded on a separate
> transaction or occurrence ... must be stated in a
> separate count or defense.

> Rule 18(a) controls the joinder of claims.  In general, "[a]

party asserting a claim ... may join as independent or

alternative claims, as many claims as it has against an opposing party."

Rule 20(a)(2) controls the permissive joinder of defendants in pro se prisoner actions as well as other civil actions.

> Persons ... may be joined in one action as defendants if:
>      (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; <u>and</u>
>      (B) any question of law or fact common to all defendants will arise in the action.

(emphasis added). <u>See</u>, <u>e.g.</u>, <u>Pruden v. SCI Camp Hill</u>, 252 Fed.Appx. 436 (3d Cir. 2007); <u>George v. Smith</u>, 507 F.3d 605 (7th Cir. 2007).

In actions involving multiple claims and multiple defendants, Rule 20 operates independently of Rule 18.

> Despite the broad language of rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.  If the requirements for joinder of parties have been satisfied, however, Rule 18 may be invoked independently to permit plaintiff to join as many other claims as plaintiff has against the multiple defendants or any combination of them, even though the additional claims do not involve common questions of law or fact and arise from unrelated transactions.

7 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, <u>Federal Practice and Procedure</u>, § 1655 (3d ed. 2009).

The requirements prescribed by Rule 20(a) are to be liberally construed in the interest of convenience and judicial

economy.  Swan v. Ray, 293 F.3d 1252, 1253 (11th Cir. 2002).

However, the policy of liberal application of Rule 20 is not a

license to join unrelated claims and defendants in one lawsuit.

See, e.g., Pruden v. SCI Camp Hill, 252 Fed.Appx. 436 (3d Cir.

2007); George v. Smith, 507 F.3d 605 (7th Cir. 2007); Coughlin v.

Rogers, 130 F.3d 1348 (9th Cir. 1997).

Pursuant to Rule 21, misjoinder of parties is not a ground

for dismissing an action.  Instead, a court faced with a

complaint improperly joining parties "may at any time, on just

terms, add or drop a party.  The court may also sever any claims

against a party."[1]

Where a complaint can be remedied by an amendment, a

district court may not dismiss the complaint with prejudice, but

must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34

(1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d

Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane

v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal

pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg

County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

---

[1] Here, the claims against the Asbury Park Police and
defense attorney Thomas Martin are not properly joined in one
action.  As the claims are otherwise dismissible, however, this
Court need not rely upon the improper joinder as a grounds for
dismissal of either claim.

III.   SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

IV.   ANALYSIS

A.   The Claims Against the Asbury Park Police

As noted above, the Court construes the Complaint as asserting against the Asbury Park Police claims for unlawful search and false arrest, in violation of the Fourth Amendment protections against unreasonable searches and seizures.

In the caption of the Complaint, Plaintiff names the "Asbury Park Police" as the defendant in this claim.  However, in the

text of the Complaint, Plaintiff names the Asbury Park Police

and, parenthetically, "(all John and Jane Does 1-100)"; Plaintiff

does not further describe the fictitious police defendants.

Thus, it is not clear whether Plaintiff intends to sue the

municipal police department and/or individual officers.

To the extent Plaintiff seeks to sue Asbury Park, or its

municipal police department, the Complaint fails to state a

claim.  As an initial matter, the Asbury Park Police Department

is not an entity that has the capacity to be sued in a civil

rights action in federal court.  See Fed.R.Civ.P. 17(b).  For

example, pursuant to state law,

> The governing body of any municipality, by ordinance,
> may create and establish, as an executive and
> enforcement function of municipal government, a police
> force, whether as a department or as a division, bureau
> or other agency thereof, and provide for the
> maintenance, regulation and control thereof.  Any such
> ordinance shall, in a manner consistent with the form
> of government adopted by the municipality and with
> general law, provide for a line of authority relating
> to the police function ...  The ordinance may provide
> for the appointment of a chief of police and ... the
> prescription of their powers, functions and duties, all
> as the governing body shall deem necessary for the
> effective government of the force.

N.J.S.A. 40A:14-118 (emphasis added).  Thus, a number of courts

have held that a municipal police department in New Jersey is not

a "person," separate from the municipality, subject to § 1983

liability.  See, e.g., Hernandez v. City of Union City, 264

Fed.Appx. 221, 223 n.1, 2008 WL 364275 (3d Cir. 2008); Briggs v.

Moore, 251 Fed.Appx. 77, 2007 WL 3014802 (3d Cir. 2007), cert.

11

denied, 553 U.S. 1057 (2008); <u>Brown v. Township of Berlin Police</u> <u>Dept.</u>, Civil No. 08-3464, 2010 WL 4193033 (D.N.J. Oct. 20, 2010) (collecting cases); <u>Adams v. City of Camden</u>, 461 F.Supp.2d 263, 266 (D.N.J. 2006); <u>Maimone v. City of Atlantic City</u>, 188 N.J. 221, 228 (2006) (noting the lower court's dismissal of the municipal police department and the plaintiff's decision not to challenge the dismissal). <u>But see</u> <u>Tortorella v. City of Orange</u>, Civil No. 02-4819, 2007 WL 151396 (D.N.J. 2007) (no New Jersey case law or statutory authority dictates that a municipal police department may not sue and be sued in a § 1983 action).

Moreover, to the extent the Complaint could be construed as asserting a claim against the municipality of Asbury Park, <u>see</u>, <u>e.g.</u>, <u>Bonenberger v. Plymouth Twp.</u>, 132 F.3d 20, 25 n.4 (3d Cir. 1997) (treating the named defendant municipality and its named police department as a single entity for purposes of section 1983 liability), <u>Williams v. Northfield Police Dept.</u>, Civil No. 09-6192, 2010 WL 2802229, at *4 n.1 (D.N.J. July 14, 2010) (construing claim against Northfield Police Department as against the unnamed City of Northfield), it fails to state a claim.

Local government units and supervisors are not liable under § 1983 solely on a theory of <u>respondeat</u> <u>superior</u>. <u>See</u> <u>City of</u> <u>Oklahoma City v. Tuttle</u>, 471 U.S. 808, 824 n.8 (1985); <u>Monell v.</u> <u>New York City Department of Social Services</u>, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution

of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

To establish municipal liability under § 1983, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990), quoted in Blanche Rd. Corp. v. Bensalem Twp., 57 F.3d 253, 269 n.16 (3d Cir.), cert. denied, 516 U.S. 915 (1995), and quoted in Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118, 126 (3d Cir. 2000). A plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the plaintiff's injury. Monell, 436 U.S. at 689.

13

A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." <u>Kneipp v. Tedder</u>, 95 F.3d 1199, 1212 (3d Cir. 1996) (quoting <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality opinion)). A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." [<u>Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown</u>, 520 U.S. 397, 404 (1997).]

There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'"

<u>Natale</u>, 318 F.3d at 584 (footnote and citations omitted).

Here, Plaintiff has alleged no facts that would support a claim against the Asbury Park Police or the municipality of Asbury Park. Accordingly, for all the foregoing reasons, all claims against the Asbury Park Police will be dismissed with prejudice.

B.   <u>Claims Against the John and Jane Doe Officers</u>

Plaintiff also alleges, against fictitious police officers, claims for unlawful search and false arrest in violation of the Fourth Amendment.

The Fourth Amendment to the federal Constitution, made applicable to the States by the Fourteenth Amendment, <u>Mapp v. Ohio</u>, 367 U.S. 643 (1961), provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend IV.

1.   <u>Unlawful Search</u>

"A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." <u>U.S. v. Jacobsen</u>, 466 U.S. 109, 113 (1984) (footnote and citations omitted).

"[V]alid warrants to search property may be issued when it is satisfactorily demonstrated to the magistrate that fruits, instrumentalities, or evidence of crime is located on the premises," even if "the owner or possessor of the place to be searched is not then reasonably suspected of criminal involvement." <u>Zurcher v. The Stanford Daily</u>, 436 U.S. 547, 559-60 (1978). "It is well settled under the Fourth and Fourteenth

Amendments that a search conducted without a warrant issued upon probable cause is 'per se unreasonable ... subject only to a few specifically established and well-delineated exceptions.'" Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973) (quoting Katz v. United States, 389 U.S. 347, 357 (1967)).  Those exceptions include search incident to arrest, search made in "hot pursuit," and search pursuant to consent.  Katz, 389 U.S. at 357-58.

For a seizure to be constitutional based on consent, the consent must have been "voluntarily given, and not the result of duress or coercion, express or implied."  Bustamonte, 412 U.S. at 248.  "Voluntariness is a question of fact to be determined from all the circumstances," Bustamonte, 412 U.S. at 248-9, and resolution of that question must take account of "subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents," 412 U.S. at 229.

Among the factors relevant to a determination of voluntariness is the extent to which police suggest that they can obtain a warrant if consent is not given.

> When evidence exists to show ... -- that a
> defendant believed he must consent -- such
> evidence weighs heavily against a finding
> that consent was voluntarily given.  And when
> that belief stems directly from
> misrepresentations by government agents,
> however innocently made, we deem the consent
> even more questionable.

[United States v. Molt, 589 F.2d 1247, 1251-52 (3d Cir. 1978).]  The question of voluntariness often turns on the language the police use in indicating that they

16

will seek a warrant if they do not get the defendant's consent.  When the police state that they will <u>seek</u> to obtain a warrant if consent is not given, there is generally no coercion absent other factors.  However, when the police give the impression that the obtainment of the warrant will be automatic, there is a strong presumption of coercion.  In a case involving a similar situation, our court of appeals stated:

> To the extent that some versions of [the police's] statement suggest that acquiring the warrant would be a foregone conclusion, [the police] might have conveyed to [the defendants] the impression that they had no choice but to consent.  On the other hand, if the district court found that [the police officer] clearly indicated to [the defendant] that absent consent, he would only <u>seek</u> to obtain a warrant, and that a magistrate would first have to determine that probable cause existed, such a finding would not militate at all against a finding of voluntary consent.

<u>United States v. Sebetich</u>, 776 F.2d 412, 425 (3d Cir. 1985), <u>reh'g denied</u>, 828 F.2d 1020 (1987), and <u>cert. denied</u>, 484 U.S. 1017 (1988) (emphasis in original).

<u>United States v. Flores</u>, 1991 WL 171394, *10-11 (E.D. Pa. Aug. 29, 1991) (citations omitted), <u>aff'd</u>, 970 F.2d 900 (3d Cir. 1992) (Table).

In addition, the person giving consent to the search must have the authority to do so.  <u>United States v. Matlock</u>, 415 U.S. 164, 171 (1974).  Thus, consent may be given by a third party "who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." <u>Id.</u>

> The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, but rests

17

> rather on mutual use of the property by persons
> generally having joint access or control for most
> purposes, so that it is reasonable to recognize that
> any of the co-inhabitants has the right to permit the
> inspection in his own right and that the others have
> assumed the risk that one of their number might permit
> the common area to be searched.

Id. at 171, n.7 (citations omitted). Cf., e.g., Frazier v. Cupp,

394 U.S. 731, 740 (1969) (by allowing cousin use of a duffel bag,

and leaving it in cousin's home, cousin possessed authority to

consent to its search notwithstanding owner's allegation that

cousin had permission to use only one compartment within the

bag); Stoner v. California, 376 U.S. 483, 488-90 (1964) (search

of hotel room cannot rest upon consent of hotel proprietor in

absence of indication that proprietor has been authorized by

occupant to permit police to search occupant's room); United

States v. Kelly, 529 F.2d 1365 (8th Cir. 1976) (consent given by

common carrier does not satisfy the requirements of the Fourth

Amendment).

　　Here, Plaintiff alleges that police officers entered his

home and searched it without consent.  He alleges that the

"consent" signed by his girlfriend was coerced.  He has stated a

claim for unlawful search, by the officers involved, sufficient

to avoid dismissal at this time.

　　2.　False Arrest

　　It is well established in the Third Circuit that an arrest

without probable cause is a Fourth Amendment violation actionable

18

under § 1983.  See Walmsley v. Philadelphia, 872 F.2d 546 (3d Cir. 1989)(citing cases); see also, Albright v. Oliver, 510 U.S. 266, 274 (1994)(a section 1983 claim for false arrest may be based upon an individual's Fourth Amendment right to be free from unreasonable seizures).  Under New Jersey law, false arrest has been defined as "the constraint of the person without legal justification."  Ramirez v. United States, 998 F. Supp. 425, 434 (D.N.J. 1998) (quoting Fleming v. United Postal Service, Inc., 604 A.2d 657, 680 (N.J. Law Div. 1992)).

To state a Fourth Amendment claim for false arrest, a plaintiff must allege two elements:  (1) that there was an arrest; and (2) that the arrest was made without probable cause. Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988).  To establish the absence of probable cause, a plaintiff must show "that at the time when the defendant put the proceedings in motion the circumstances were such as not to warrant an ordinary prudent individual in believing that an offense had been committed."  Lind v. Schmid, 67 N.J. 255, 262 (1975).  "Probable cause . . . requires more than mere suspicion; however, it does not require that the officer have evidence to prove guilt beyond a reasonable doubt."  Orsatti v. New Jersey State Police, 71 F.3d 480, 482-83 (3d Cir. 1995).  Rather, probable cause exists when the facts and circumstances are "sufficient to warrant a prudent man in believing that the

19

defendant had committed or was committing an offense." Gerstein v. Pugh, 420 U.S. 103, 111 (1975) (quoting Beck v. State of Ohio, 379 U.S. 89, 91 (1964)); Sharrar v. Felsing, 128 F.3d 810, 817 (3d Cir. 1997).

Moreover "where the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." Groman v. Manalapan, 47 F.3d 628, 636 (3d Cir. 1995); Palma v. Atlantic County, 53 F. Supp. 2d 743, 755 (D.N.J. 1999)(citing Groman). See also Anela v. City of Wildwood, 595 F. Supp. 511, 512 (D.N.J. 1984)(holding a person for any length of time without legal justification may be a violation of the right to liberty under the Fourteenth Amendment and thus states a claim of false imprisonment under § 1983).[2]

Plaintiff's claim of false arrest, as against the arresting officer(s), is sufficient to avoid dismissal at this time.[3]

---

[2] While "[a] false imprisonment claim under 42 U.S.C. § 1983 is based on the Fourteenth Amendment protection against deprivations of liberty without due process of law[,]" Baker v. McCollan, 443 U.S. 137, 142 (1979), the claim is derivative of a Fourth Amendment violation for arrest without probable cause. See Groman, 47 F.3d at 636.

[3] Although the Complaint states a claim sufficient to avoid dismissal at this time, the Court is mindful that Plaintiff is presently incarcerated pursuant to a conviction arising out of the events described in the conviction and that the action may need to be stayed, pursuant to Wallace v. Kato, 549 U.S. 384 (2007), or dismissed without prejudice, pursuant to Heck v. Humphrey, 512 U.S. 477 (1994), as the facts become developed.

B.   <u>The Claim for Ineffective Assistance of Counsel</u>

Plaintiff alleges that his defense counsel "railroaded" him into pleading guilty.  The Court construes this as a claim that he was deprived of his Sixth Amendment right to effective assistance of counsel.

Although not "immune" from suit or liability under § 1983, an attorney may be entitled to dismissal of a civil rights action on the ground that it fails to state a claim, because lawyers, typically, are not "state actors."  "[A] lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of § 1983."  <u>Polk County v. Dodson</u>, 454 U.S. 312, 318 (1981).  Similarly, a public defender "does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."  <u>Polk Co. v. Dodson</u>, 454 U.S. at 325.[4]

Moreover, generally court-appointed counsel, public defenders, and investigators employed by a public defender are absolutely immune from civil liability under § 1983 when acting within the scope of their professional duties.  <u>Black v. Bayer</u>, 672 F.2d 309, 317 (3d Cir.), <u>cert. denied</u>, 459 U.S. 916 (1982).

---

[4] Plaintiff does not state whether he was represented by a court-appointed attorney or privately-retained counsel.

Accordingly, Plaintiff fails to state a claim against his defense counsel under § 1983.

## V.   CONCLUSION

For the reasons set forth above, all Fourth Amendment claims against the Asbury Park Police will be dismissed with prejudice. All Sixth Amendment claims against Thomas Martin will be dismissed with prejudice, for failure to state a claim.  However, the Fourth Amendment claims for unlawful search and false arrest, asserted against the fictitious John/Jane Doe police officers, may proceed.[5]  It does not appear that Plaintiff can amend the Complaint at this time to cure the deficiencies described herein. An appropriate order follows.

S/Freda L. Wolfson
Freda L. Wolfson
United States District Judge

Dated: February 10, 2011

---

[5] In order to proceed with this action against only fictitious defendants, Plaintiff must timely identify those police officers, amend the Complaint to identify them, and provide the U.S. Marshals Service with sufficient identifying information to permit service, or face dismissal without prejudice for failure to prosecute.  See, e.g., Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 867-68 (3d Cir. 1984); Fed.R.Civ.P. Rule 15.  The Court notes that Plaintiff was prosecuted as a result of the events described herein, so the pertinent information should be available to Plaintiff from the police report or other materials used at his trial.

22